UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CIVIL ACTION NO. 4:15CV-00082-HBB

HALLIE R. WILLIAMS                                                                                    PLAINTIFF

VS.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security                                                            DEFENDANT

MEMORANDUM OPINION
AND ORDER

BACKGROUND

The Commissioner of Social Security denied Hallie R. Williams' application for supplemental security income benefits. Williams seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Both Williams (DN 13-1) and the Commissioner (DN 14) have filed a Fact and Law Summary. Pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 11).

FINDINGS OF FACT

The only job that 31-year-old Hallie R. Williams ("Williams") has ever performed is work for a janitorial service from February of 2005 to June of 2005 (Tr. 51). Prior to her five-month stint as a janitor, Williams was not employed because her ex-husband was controlling and would

1

not allow her to work (Tr. 52). In 2001, Williams' husband ran over her with his car, which caused her back problems (Tr. 52). Williams currently lives with a roommate and her two daughters (Tr. 49). Her younger daughter suffers from spinal bifida and is confined to a wheelchair (Tr. 49).

Williams applied for supplemental security income benefits (SSI) under Title XVI, claiming that she became disabled on January 30, 2008 (Tr. 175), as a result of back problems (Tr. 212). Her application was denied initially (Tr. 84) and again on reconsideration (Tr. 100). Administrative Law Judge Jerry Faust ("ALJ") conducted a video hearing in St. Louis, Missouri (Tr. 41). Williams attended the video teleconference in Owensboro, Kentucky, and was represented by Bradley Rhoads (Tr. 43). Hermona Robinson, an impartial vocational expert, also testified at the hearing via telephone (Tr. 43). The ALJ issued an unfavorable decision on January 29, 2014 (Tr. 35).

The ALJ applied the traditional five-step sequential analysis promulgated by the Commissioner, 20 C.F.R. § 404.1520; Kyle v. Comm'r of Soc. Sec., 609 F.3d 847, 855 (6th Cir. 2010), and found as follows. First, Williams has not engaged in substantial gainful activity since May 21, 2012, the application date (Tr. 22). Second, Williams has the following severe impairments: pain disorder, panic disorder, depressive disorder, lumbar radiculopathy, degenerative disc disease with disc herniation, and status-post back surgery (Tr. 22). Third, Williams's impairments or combination of impairments do not meet or medically equal the severity of a listed impairment from 20 C.F.R. Pt. 404, Subpt. P, App'x 1 (Tr. 22). Fourth, Williams has the residual functional capacity ("RFC") to perform "light work" with the following limitations:

> [T]he claimant can lift and carry 10 pounds occasionally, sit for a total of 6 hours in an 8-hour workday, with normal breaks, and stand and walk for a total of 2 hours in an 8-hour workday, with normal breaks, but for no more than 20 minutes at a time. She can occasionally climb ramps, stairs, ladders, ropes, and scaffolds. The claimant can occasionally stoop, crouch, and crawl. She can perform simple and routine tasks in [sic] relatively static environment, with infrequent changes and no fast production pace. The claimant can have occasional and superficial interaction with others. Superficial interaction is defined as no negotiation, confrontation, arbitration, mediation, supervision, or persuasion of others. In addition, the claimant would be required to stand up at the workstation every 20 minutes.

(Tr. 24). Additionally, Williams is unable to perform any of her past relevant work (Tr. 33). Fifth and finally, considering Williams' age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform (Tr. 34).

Williams appealed the ALJ's decision (Tr. 15). The Appeals Council declined review (Tr. 1). At that point, the denial became the final decision of the Commissioner, and Williams appealed to this Court (DN 1).

## CONCLUSIONS OF LAW

### A. Standard of Review

When reviewing the Administrative Law Judge's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). Instead, the Court's review of the Administrative Law Judge's decision is limited to an inquiry as to whether the Administrative Law Judge's findings were supported by substantial evidence, 42 U.S.C. § 405(g); Foster v. Halter, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted), and whether the Administrative Law Judge employed the proper legal

3

standards in reaching her conclusion. See Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence exists "when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993).

### B. Finding No. 4: Residual Functional Capacity

Williams makes numerous challenges to the ALJ's residual functional capacity determination at Finding No. 4 (DN 13-1). The residual functional capacity finding is the Administrative Law Judge's ultimate determination of what a claimant can still do despite her physical and mental limitations. 20 C.F.R. §§ 416.945(a), 416.946. The Administrative Law Judge bases his residual functional capacity finding on a review of the record as a whole, including a claimant's credible testimony and the opinions from a claimant's medical sources. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

#### 1. Medical Opinions in the Record

#### a. Dr. Krishna Nadar

Williams believes the ALJ erred in affording Dr. Nadar's opinion from November of 2013 "minimal weight" (DN 13-1, at p. 7-8). Williams claims that the case should be remanded so the ALJ can reconsider whether Dr. Nadar's opinion should be given controlling weight (Id. at p. 8).[1] In opposition, the Commissioner argues that the ALJ reasonably rejected Dr. Nadar's opinion and gave several good reasons for assigning the opinion minimal weight (DN 14, at p. 5-6).

---

1 Williams also claims in a single sentence that "[t]he statement provided by Dr. Nadar also established that [her] lumbar condition clearly met Medical Listing 1.04 Disorders of the Spine" (DN 13-1, at p. 8). It is well established that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation are deemed waived." United States v. Layne, 192 F.3d 556, 566 (6th Cir. 1999) (quoting McPherson v. Kelsey, 125 F.3d 989, 995-96 (6th Cir. 1997)). Because Williams fails to point to any evidence supporting her argument that she meets Listing 1.04, the undersigned deems the argument waived.

The regulations require Administrative Law Judges to evaluate every medical opinion in the record. 20 C.F.R. 404.1527(c). The source of a medical opinion dictates the process by which the Administrative Law Judge gives it weight. Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 376 (6th Cir. 2013). Treating sources must be given controlling weight if their opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence" in the claimant's case record. 20 C.F.R. § 404.1527(c)(2); Gayheart, 710 F.3d at 376. If the Administrative Law Judge determines a treating source should not receive controlling weight, he applies factors from the regulations to determine the appropriate weight to assign the opinion. These factors include the length, nature, and extent of the treatment relationship, the supportability and consistency of the opinion compared to other evidence in the record, and the treating source's area of specialty.[2] 20 C.F.R. § 404.1527(c)(2)(i)-(ii), (c)(3)-(5); Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004). The Administrative Law Judge must also provide "good reasons" in his decision for the weight given to the treating source opinion. 20 C.F.R. § 404.1527(c)(2); Gayheart, 710 F.3d at 376.

Here, the ALJ properly determined that Dr. Nadar's opinion, as a treating physician, was not entitled to controlling weight because his opinion is not supported by his treatment notes or the totality of the evidence in the record (Tr. 28-29). To support his finding that Dr. Nadar's opinion should receive "minimal weight," the ALJ used the factors identified in 20 C.F.R. § 404.1527(c)(2)(i)-(ii), (c)(3)-(5) and gave "good reasons." For instance, the ALJ identified that Dr. Nadar is Williams' treating pain management specialist, Dr. Nadar treated Williams'

---

2 Nevertheless, the regulations do not require an exhaustive factor-by-factor analysis to satisfy the rule. See Francis v. Comm'r of Soc. Sec., 414 F. App'x 802, 804 (6th Cir. 2011).

consistently, and Dr. Nadar's opinion was conclusory and provided little explanation of the evidence (Tr. 29). The ALJ also noted that Dr. Nadar's treatment notes were inconsistent with his opinion, in that Dr. Nadar assessed Williams as doing well with the spinal cord stimulator and Williams' activities of daily living improved with medication (Tr. 29). Finally, the ALJ explained that Dr. Nadar's opinion was inconsistent with the opinions of Dr. Olaguoke and Dr. Hernandez (Tr. 29).

As for Dr. Nadar's statement that Williams "cannot work," the ALJ noted this is an issue reserved to the Commissioner (Tr. 29). Issues that are reserved to the Commissioner are findings that are dispositive of the case, or in other words, "would direct the determination or decision of disability." SSR 96-5P, 1996 WL 374183, at *2 (citing 20 C.F.R. § 404.1527(e), 416.927). Treating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance. Id. Yet these opinions should not be ignored. Id. The ALJ must instead evaluate "all the evidence in the case record to determine the extent to which the opinion is supported by the record." Id. Dr. Nadar's statement that Williams "cannot work" is an opinion reserved to the Commissioner and, thus, did not deserve controlling weight. The ALJ properly evaluated the additional evidence in the case record in determining that Dr. Nadar's opinion of total disability deserved "minimal weight" (Tr. 29).

The undersigned finds the ALJ's reasons for affording Dr. Nadar's opinion "minimal weight" are supported by substantial evidence and are "sufficiently specific to make clear to any subsequent reviewers" the reasons for his determination. Gayheart, 710 F.3d at 376 (quoting Wilson, 378 F.3d at 544).

b. Dr. Olaguoke Akinwande

Williams argues that the ALJ's decision to give "significant weight" to Dr. Olaguoke Akinwande's opinion is not supported by substantial evidence (DN 13-1, at p. 8). Specifically, Williams claims the ALJ provided no explanation as to how Dr. Akinwande's one-time evaluation is supported by the evidence as a whole (Id. at p. 9).

In weighing a consultative examiner's opinion, an Administrative Law Judge must evaluate the factors listed in 20 C.F.R. § 404.1527(c). As mentioned above, these factors include: the length, nature, and extent of the treatment relationship, the supportability and consistency of the opinion compared to other evidence in the record, and the treating source's area of specialty.

Here, the ALJ determined that Dr. Akinwande's opinion from July of 2012 should be afforded "significant weight" because it is consistent with the record as a whole (Tr. 28). The ALJ noted Dr. Akinwande's observations that Williams has no problem hearing, speaking, or traveling and restricted Williams from sitting or standing for longer than 20 minutes, and lifting, carrying, and handling objects greater than 10 pounds at a time (Tr. 28).

After reviewing the record, the undersigned finds that although the ALJ's determination regarding Dr. Akinwande's opinion is brief, it supported by substantial evidence. For instance, Dr. Akinwande's observations that Williams had a slow gait and decreased range of motion are corroborated by Dr. Nadar's treatment notes from April of 2012, indicating Williams had abnormal gait and range of motion (Tr. 318, 320, 374). Further, both State agency physicians limited Williams' ability to lift, sit, stand, and walk (Tr. 80, 96) consistent with Dr. Akinwande's recommendations (Tr. 375). As a result, the ALJ's decision to afford Dr. Akinwande's opinion "significant weight" is supported by substantial evidence.

c. State Agency Physicians, Marcy Walpert, and Lorena Ard

Williams claims that the ALJ improperly gave significant weight to the "snapshot opinions" of the non-examining state agency physicians (DN 13-1, at p. 9). Williams believes these opinions are contradicted by the opinions Marcy Walpert, M.A., and Lorena Ard, the treating psychiatric nurse practitioner, who actually observed her (Id.). Williams argues that Marcy Walpert and Lorena Ard "make clear that [her] mental conditions are disabling" (Id.).

As the undersigned discussed in evaluating Dr. Akinwande's opinion, an Administrative Law Judge weighs a consultative examiner's opinion by evaluating the factors listed in 20 C.F.R. § 404.1527(c). Here, in affording consultative examiner Marcy Walpert's opinion minimal weight, the ALJ pointed to Ms. Walpert's statement that "[a]t this time, it does not appear to be likely that the claimant could tolerate a full-time day-to-day work setting given her current level of symptomology" (Tr. 32, 370). The ALJ noted that this statement was both equivocal and a "conclusion on the ultimate issue," which should be reserved for the Commissioner (Tr. 32). Most importantly, the ALJ reasoned that Ms. Walpert's opinion was inconsistent with the record as a whole (Id.). The undersigned finds the ALJ's decision to afford Ms. Walpert's opinion minimal weight is supported by substantial evidence in the record.

Similarly, the ALJ properly evaluated Lorena Ard's opinion. Because Lorena Ard is an APRN, the regulations do not consider her an "acceptable medical source." 20 C.F.R. § 404.1513(a); Cruse v. Comm'r of Soc. Sec., 502 F.3d 532, 541 (6th Cir. 2007). Rather, APRNs are considered "other sources," and an Administrative Law Judge may apply the factors from 20 C.F.R. 404.1527(c) to their opinions. SSR 06-03p, 2006 WL 2329939, at *4-5. Accordingly, even though Lorena Ard is Williams' treating psychiatric nurse practitioner, the ALJ properly refrained from evaluating her opinion for controlling weight.

In determining that Nurse Ard's opinion should receive minimal weight, the ALJ explained that her treatment notes did not reflect Williams' inability to work on a full-time basis (Id.). The ALJ also noted that Nurse Ard's opinion as to Williams' ability to return to work on a full time basis is a conclusion on the ultimate issue (Id.). Finally, the ALJ stated that Ms. Ard's opinion was conclusory, provided little explanation of the evidence, and contains inconsistencies as to when she began treating Williams (Id.). The ALJ's decision to afford Nurse Ard's opinion minimal weight is also supported by substantial evidence in the record.

What of Williams' argument that the ALJ improperly afforded the state agency physicians' opinions significant weight? State agency physicians are considered experts in Social Security disability evaluation, and therefore, Administrative Law Judges must consider findings and other opinions by State agency physicians as opinion evidence. 20 C.F.R. § 404.1527(e)(2)(i). The opinions of State agency medical physicians "can be given weight only insofar as they are supported by evidence in the case record." SSR 96-6P, 1996 WL 374180, at *2 (July 2, 1996).

Here, the ALJ gave significant weight to the State agency opinions of Dr. Mendelson and Dr. Sillers because he found their opinions were consistent with the record as a whole in finding Williams' mental impairments are not as limiting as alleged (Tr. 31-32). After reviewing Dr. Mendelson's and Dr. Sillers' opinions, the undersigned agrees. For instance, Ms. Walpert observed Williams' speech was clear, coherent, and relevant and that her thought processes were normal (Tr. 366). Ms. Walpert also noted that Williams was capable of understanding the instructions throughout the evaluation (Tr. 370). Similarly, Nurse Ard's notes from February, June, and August of 2013, revealed Williams' memory was within normal limits and her attention span and concentration were appropriate (Tr. 406, 423, 430). These observations are consistent with Dr. Medelson's and Dr. Sillers' conclusions that Williams suffered from only mild

9

difficulties in maintaining concentration, persistence, or pace (Tr. 78, 94). Further, the State agency physicians recognized that Williams suffers from depression and anxiety but concluded that these mental conditions were not severe (Tr. 79, 95). The undersigned finds the ALJ's decision to afford the State agency psychologists' opinions significant weight is supported by substantial evidence in the record.

## 2. William's Credibility

Williams makes two arguments that the ALJ's credibility determination was improper (DN 13-1, at pp. 4-6). First, Williams claims that her allegations are consistent with the record, including the statement from Dr. Nadar, her pain specialist (Id. at pp. 4-5).

An Administrative Law Judge's credibility assessment will not be disturbed "absent compelling reason" because he is in the best position to observe the witnesses' demeanor and make an appropriate evaluation as to their credibility. Smith v. Halter, 307 F.3d 377, 379 (6th Cir. 2001); Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 531 (6th Cir. 1997). In making a credibility determination, Social Security Ruling 96-7p provides that an Administrative Law Judge must consider the record as a whole, including objective medical evidence, the claimant's statements about symptoms; any statements or other information provided by treating or examining physicians and other persons about the conditions and how they affect the claimant; and any other relevant evidence. SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996).

Here, the ALJ recognized that Williams has symptoms and limitations but found that her allegations are not persuasive to the extent they are inconsistent with the residual functional capacity (Tr. 31). To that end, the ALJ considered that Dr. Nadar's post-surgery notes indicated the procedure was generally successful in relieving symptoms, whereas Williams testified that she never experienced relief from the procedure (Tr. 26-27, 55, 396-97, 401-02). The ALJ similarly

noted that although Williams repeatedly reported to Dr. Nadar that her activities of daily living improved with medication, while the record suggests Williams has not been entirely compliant in taking her prescribed medications (Tr. 26-27).[3] Additionally, the ALJ considered Williams' potential financial motivations (Tr. 25), her history of using illicit drugs (Tr. 26), her expulsion from Dr. Nadar's pain management program (Id.), the surgical implantation of a spinal cord stimulator to mitigate pain (Id.), and Williams' testimony regarding her daily activities (Tr. 27). Because the ALJ considered the record as a whole and compared the objective medical evidence with William's subjective testimony, the undersigned finds his determination is supported by substantial evidence.

Second, Williams claims that the ALJ's statements regarding her work history and motivation to exaggerate her symptoms are biased and an abuse of discretion (Id. at pp. 5-6). In evaluating Williams' credibility, the ALJ stated:

> The claimant does not have the type of work record that enhances her allegations. Working full-time for a full year for the minimum wage in effect since 1997 results in more than $10,000 in annual income. The claimant's greatest annual earnings were less than one-third of that amount. She made over $1000 twice in her life. (Exhbit 6D). An award of benefits at the full federal benefit rate would substantially exceed with what she earned in any year. Such an annual award of benefits, would also exceed her lifetime total earnings. In addition, the benefits would be tax free, she would be relieved of the rigors, expenses, inconvenience and aggravations of working and she would receive medical benefits. Such a scenario could motivate the claimant, either consciously or subconsciously, to exaggerate her symptoms.

---

3 Courts within the Sixth Circuit have held that the Administrative Law Judge may consider evidence of noncompliance in weighing the credibility of a claimant's subjective statements regarding her subjective symptoms and limitations. Porter v. Colvin, No. 2013-80 (WOB-CJS), 2014 WL 7004857, at *8 (E.D. Ky. Dec. 10, 2014) (citing 20 C.F.R. §§ 404.1527 and 416.929).

(Tr. 25). Williams believes these statements illustrate prejudgment and bias because the primary focus when assessing a claimant's credibility should be the consistency between the testimony and the record (DN 13-1, at pp. 5-6).

As an initial matter, Williams fails to allege sufficient evidence to prove the ALJ's bias. In evaluating a claimant's case, the court must begin with the "presumption that policymakers with decisionmaking power exercise their power with honesty and integrity." Navistar Int'l. Transp. Corp. v. United States Env'l Prot. Agency, 941 F.2d 1339, 1360 (6th Cir. 1991). "The burden of overcoming the presumption of impartiality 'rests on the party making the assertion [of bias],' and the presumption can be overcome only with convincing evidence that 'a risk of actual bias or prejudgment' is present." Id. (citing Schweiker v. McClure, 456 U.S. 188, 196, 102 S.Ct. 1665, 72 L.Ed.2d 1 (1982); Withrow v. Larkin, 421 U.S. 35, 47, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975)). Essentially, any alleged prejudice on the part of the decisionmaker must be evident from the record and cannot be based on speculation or inference. Carrelli v. Comm'r of Soc. Sec., 390 F. App'x 429, 436-37 (6th Cir. 2010).

Williams alleges that a claimant's financial motivations are not a proper factor to consider in assessing credibility (DN 13-1, at p. 5). Yet numerous courts have found that a claimant's incentive or disincentive to work is a permissible criterion for an Administrative Law Judge to consider in determining credibility. See Gaddis v. Chater, 76 F.3d 898, 896 (8th Cir. 1996); Mullen v. Bowen, 800 F.2d 535, 547 (6th Cir. 1986) (ALJ considered that plaintiff may have "little incentive to return to work"); Porter v. Chater, 895 F. Supp. 1427, 1434 (D. Kan. 1995) (ALJ appropriately considered plaintiff's sporadic work history with below average earnings, and little financial incentive to return to work).

Moreover, the ALJ mentioned Williams' potential economic motivations as only one factor in evaluating her credibility but did not base his decision solely on this information (Tr. 25). As outlined above, the ALJ considered numerous factors in his credibility determination with no one factor being dispositive. The undersigned finds, therefore, that it was not improper for the ALJ to consider the potential economic motivations of Williams in weighing her credibility.

### 3. Combined Effect of Impairments

Williams claims that the ALJ erred in determining that her severe impairments in combination or alone do not render her disabled (DN 13-1, at p. 10). The Commissioner argues that the ALJ expressly considered Williams' impairments in combination (DN 14, at p. 10). A disability may result from multiple impairments, no one of which alone would constitute a full disability. Loy v. Sec'y of Health & Human Servs., 901 F.2d 1306, 1310 (6th Cir. 1990). However, an Administrative Law Judge's individual discussion of multiple impairments does not imply that he failed to consider the effect of the impairments in combination, where the Administrative Law Judge specifically refers to a "combination of impairments" in their factual findings. Gooch v. Sec'y of Health & Human Servs., 833 F.2d 589, 592 (6th Cir. 1987).

In Finding No. 4, the ALJ expressly referred to "the claimants impairments" (plural) (Tr. 25, 29, 33). Additionally, at Finding No. 3, the ALJ noted that he considered "[t]he severity of the claimant's mental impairments . . . singly and in combination" (Tr. 23). The ALJ thoroughly addressed the medical opinions in the record and spent time discussing both Williams' physical and mental impairments (Tr. 22-33), and his analysis is supported by substantial evidence.

### 4. Improper Speculation

Williams makes two claims that the ALJ improperly speculated by making his own independent medical findings (DN 13-1, at pp. 11-12). First, Williams argues the ALJ speculated

13

by affording great weight to Dr. Akinwande rather than to Dr. Nadar, her treating pain specialist (Id. at p. 11). The undersigned has already determined that the ALJ's evaluations of Dr. Akinwande's opinion and Dr. Nadar's opinion are supported by substantial evidence in the record. Second, Williams claims that the ALJ speculated that her records "did not indicate a worsening" and ignored portions of medical records to enhance his position (Id. at pp. 11-12).

The Administrative Law Judge is not bound to accept the opinion or theory of any medical expert, "but may weigh the evidence and draw his own inferences." McCain v. Dir., Office of Workers Compensation Programs, 58 F. App'x 184, 193 (6th Cir. 2003) (citation omitted). Even so, the Administrative Law Judge is not permitted to "substitute his own medical judgment for that of the treating physician," Simpson v. Comm'r of Soc. Sec., 344 F. App'x 181, 194 (6th Cir. 2009) (citing Meece v. Barnhart, 192 F. App'x 456, 465 (6th Cir. 2006)), and may not make his own independent medical findings. Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996) (citations omitted).

Here, the ALJ did not improperly speculate or make independent medical findings. Williams lists numerous pieces of evidence that she believes the ALJ has ignored, however, the Court does not require "a written evaluation of every piece of evidence." Id. at 971. Rather, the Administrative Law Judge must "sufficiently articulate his assessment of the evidence to assure that he considered the important evidence and to enable the Court to trace a path of his reasoning. Id. (quoting Carlson v. Shalala, 999 F.2d 180, 181 (7th Cir. 1993) (per curiam) (quoting Stephens v. Heckler, 766 F.2d 284, 287 (7th Cir. 1985))).

Williams lists "Spinal Cord Stimulator placed" as a piece of evidence the ALJ ignored (DN 13-1, at p. 11), but the ALJ, in fact, stated: "On May 8, 2012, the claimant underwent surgical intervention to implant a spinal cord stimulator in order to mitigate pain . . ." (Tr. 26). Williams

14

also claims the ALJ ignored continuous evidence of "chronic back pain," (DN 13-1, at pp. 11-12) but the ALJ recognized her "chronic intractable low back pain" and noted that her symptoms are genuine, although offset by successful treatment notes post-surgery (Tr. 26). Further, the ALJ concluded that Williams' condition has not worsened because records from Dr. Nadar consistently indicated that she was doing well with the stimulator and her daily activities improved with prescribed medications (Tr. 26-27). Williams' argument that the ALJ improperly speculated is, therefore, meritless.

### 5. The ALJ's RFC Determination

Williams argues that the limitations in the ALJ's RFC determination require a finding of disability (DN 13-1, at pp. 3-4). In particular, Williams states that based on the ALJ's lifting and carrying limitations, she is limited to sedentary work (Id.). Williams also believes the ALJ's limitation that she must be able to stand up at the workstation every twenty minutes requires a finding of disability (Id.). The Commissioner does not directly respond to these arguments.

The regulations define sedentary work as "involving lifting no more than 10 pounds at a time" and "walking and standing are required occasionally." 20 C.F.R. § 416.967(b); SSR 83-10., 1983 WL 31251, at *5. Light work, on the other hand, is defined as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds," and requires "a good deal of walking or standing." Id.

When a claimant's RFC falls between two exertional levels, the grid guidelines from 20 C.F.R. Pt. 404, Subpt. P, App'x 2 are used only as an analytical framework. Anderson v. Comm'r of Soc. Sec., 406 F. App'x 32, 35 (6th Cir. 2010); see also Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 531 (6th Cir. 1981). In such a situation, a vocational expert is brought in to testify as to whether a significant number of jobs exist in the national economy that a hypothetical

individual with the claimant's limitations can perform. *See* SSR 83-12, 1983 WL 31253, at *2. Substantial evidence may be produced through reliance on a vocational expert's response to an Administrative Law Judge's hypothetical questions "if the question accurately portrays [plaintiff's] individual physical and mental impairments." Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987) (quoting Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984) (additional citations omitted)).

At the Administrative hearing, the ALJ asked the Vocational Expert ("VE") to consider a hypothetical that supposed Williams is capable of: lifting and carrying ten pounds occasionally, sitting for six of eight hours, standing or walking for two of eight hours, occasionally climbing ladders, ropes, and scaffolds, occasionally stooping, crouching, and crawling, and standing up at the work station every 20 minutes[4] (Tr. 66-68). The VE testified that the 10-pound lifting restriction and 2-hour standing and walking restriction put Williams at a sedentary level. The VE gave three examples of "sedentary work" that exist at this level in significant numbers, including a sorter, an addresser, and an inspector (Tr. 67).

The ALJ adopted the above hypothetical in his RFC determination. However, rather than finding these restrictions limited Williams to sedentary work, the ALJ found that Williams is limited to light work "impeded by additional limitations" (Tr. 24, 34). Later in his RFC assessment, the ALJ states that after considering the medical opinions and evidence, he "limits [Williams] to work at the sedentary exertional level" (Tr. 29). Consequently, it seems the ALJ found that Williams fell somewhere in between light and sedentary work based on his RFC limitations.

---

4 The undersigned has omitted the non-exertional limitations from the discussion of the hypothetical because Williams did not challenge these limitations in his Fact & Law Summary.

Because Williams' RFC falls between two exertional levels, the ALJ properly relied on the VE's testimony. Even though the ALJ's RFC mentions both sedentary work and light work, his specific limitations are supported by substantial evidence in the record. For instance, the VE testified that significant jobs existed in the national economy for the exact set of restrictions outlined in the ALJ's RFC determination (Tr.67-68). Additionally, the ALJ explains in detail that he relied on the VE's testimony in determining the extent to which Williams' limitations eroded the unskilled light occupational base (Tr. 34). Finally, Dr. Akinwande's opinion, which was given significant weight by the ALJ, outlines the same restrictions from the VE's hypothetical and the ALJ's residual functional capacity determination[5] (Tr. 375). Regardless, even if the ALJ had found that Williams was limited to a full range of sedentary work, the grid rules would still direct a conclusion of "not disabled."[6] 20 C.F.R. Pt. 404, Subpt. P, App'x 2, Table 1.

Williams' argument that the ALJ's limitation that she must stand at her workstation every twenty minutes will force her to exceed the ALJ's sitting and standing limitations (DN 13-1, at pp. 3-4), is persuasive. The undersigned agrees with Williams that it is impossible for her to maintain a 2-hour limit of standing and walking and a 6-hour limit on sitting with the ALJ's additional restriction that she be "*required* to stand up at the workstation every 20 minutes" (Tr. 24) (emphasis added). Because the ALJ's RFC limitations are contradictory, the undersigned finds the RFC determination should be remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the ALJ should reevaluate Williams' RFC limitations and, if necessary, re-determine any other RFC considerations or impacted steps in the sequential analysis.

---

5 Dr. Akinwande opined: "Sitting or standing for longer than 20 minutes or any given time should be restricted. Lifting, carrying, and handling objects will be limited to 10 pounds at this time" (Tr. 375).

6 Rule 201.24 provides that a younger individual age 18-44, with limited or less education, at least literate and able to communicate in English, is not disabled. 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 201.24.

## ORDER

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with the instant Memorandum, Opinion, and Order.

This is a final and appealable Order and there is no just cause for delay.

Copies:	Counsel